23-3568, United States of America v. Darrin Harsley, argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellate when ready. Thank you. Good morning, your honors. I'm Melissa Salinas from the University of Michigan Law School. I have the privilege of supervising law student Peter Vandevoort. Thank you for allowing him to argue. Thank you. May it please the court. My name is Peter Vandevoort, and I'm representing Mr. Darrin Harsley. I'd like to reserve three minutes for rebuttal.  This appeal is about the sentence Mr. Harsley received and the procedure behind it. Rather than rely on the record before it or the arguments presented to it, the district court instead made unsupported conclusions about Mr. Harsley and his actions. It procedurally erred in two ways that we'll discuss today. First, the district court failed to adequately address Mr. Harsley's arguments, especially his argument that the proximity in time between his prior convictions warranted a lower sentence. Second, the district court made clearly erroneous findings of fact, characterizing Mr. Harsley in a manner that was explicitly contradicted by the record. At bottom, your honors. Mr. Vandevoort, if we start with the first argument that you're making, which seems to be the most substantive here, as I understood it, what you're saying is the district judge asked the Bostic question, and Mr. Harsley's attorney said that he basically renewed all the objections that he made in the objections to the pre-sentence report. Now, I want to park that off to the side for just a second about whether that's even possible, because I can tell you that as a district judge, if all of a sudden somebody said that and they don't tell me what it is they objected to that they didn't raise at the sentencing and therefore I hadn't addressed it, I don't have a chance to address it unless I stop, go back over the entire pre-sentence report and the objections. That's why I want to park that off to the side. I want to accept your premise for just a second, even though I seriously question the validity of your premise. So then I go on to try to figure out what is it that Mr. Harsley's attorney objected to in either the objections to the pre-sentence report or the sentencing memorandum that Judge Adams did not address in one way or the other. And I can't figure out what it is you say that was objected to previously prior to the sentencing that wasn't addressed at the sentencing. So could you be more specific and if it's one thing tell me that or if it's two or three I mean tell me whatever it is? Yes your honor. So we agree that the district court made references to this past incident about the proximity and time. But where we disagree is the matter of that it adequately addressed these arguments. Now the district court under Thomas Matthews hasn't... Okay so it's the proximity of the two different events then? Yes. Specifically. Certainly Adams alluded to that, there's no question about that. Yes. And specifically the district court... So where do you drive your authority that he had to say more about that particular objection? And actually that objection was raised again during the sentencing wasn't it? Yes it was. It was raised three times. So that isn't something that we look back earlier to see if there was yet something additional that was done in the objections to the pre-sentence report and or the sentencing memorandum. That came up at the sentencing. So your honor the exact quote... Let's let him answer now, you've asked about ten questions. That's fair. Let's let him answer. That's fair. Okay. The exact quote that you're referring to is, and that's from page ID 2-2021, and the phone is assault convictions. Yes they are close in time but it just indicates in my view, contrary to counseling for a variance, it just indicates the dangerous nature of the defendant, that he's willing to continue his violent activities. Now this took the argument that Mr. Harsley made and flipped it on its head in a way that's contrary to the laws we know it. That if we look at cases like Powell, that says quote, one who is subjected only to a momentary detention and later re-offends is less culpable than a defendant who is subjected to the greater deterrence of an arrest yet still re-offends. And Judge McKeague, I know that you were on the panel for the 2023 case U.S. v. William C. Rogers, which conveyed a similar thing in saying that a person who is not subject to deterrence has fewer opportunities to correct their ways. And so here, the district court said, and I quote once again, yes they are close in time but it just indicates the dangerous nature of the defendant. So back to where we were a second ago. It isn't that Adams missed an argument that he didn't discuss. He understood the argument and he did discuss it. Your contention here is his discussion was not adequate. Yes. It failed to adequately address the argument. And so... So arguably, should the counsel at the sentencing, which was not you, should that counsel have explained that to Judge Adams that he needed to explain more what he, the DJ, was thinking on this? That it was the explanation that was not adequate? We believe that since counsel said that he renewed his objections to the PSR that he did provide adequate notice to the judge and that this is supported by cases such as Morgan. The whole idea of Bostick, and we're sitting with the author of Bostick, is that you give the district judge a chance to correct an error that can be corrected before the sentencing is adjourned. So how was Adams to discern from, I renew my objections in the pre-sentence report, to the fact that he didn't adequately explain why these two offenses occurring within a week or whatever wasn't adequately explained by Adams? Well, Your Honor, there's only four objections in the pre-sentence report, and that the district judge did make multiple references to it throughout the sentencing hearing, showing familiarity with it. In addition, even if you choose not to use an abuse of discretion standard here, even under Thomas Matthews, that a district court plainly errs when it's non-responsive to a non-frivolous argument. And so here... You keep saying he was non-responsive to a non-frivolous argument. He was responsive. It just wasn't responsive enough. So how do we measure... Because we have a lot of cases that say you don't have to say a lot. So how do we measure where the line is here, where he said enough, where what he said was enough versus where you are, which is the other side of the line, where what he said isn't enough? Well, we could look at cases like Thomas that worry about when a court might misconstrue, ignore, or forget an argument. And here, the district court very much misconstrued the argument, that it flipped it on its head in what it's saying, and it flipped it on its head in a manner that was contrary to case law, that Powell and Rogers show that deterrence, show that the proximity in time when there is no intervening into arrest, that shows that a person has not been deterred and has not had the chance to rectify their actions. Well, here, the district court found that that was an aggravating factor, that that made Mr. Harsley more dangerous when, in fact, that this wasn't the case at all. And in fact, that these types of ideas tie into the clearly erroneous facts that the district court found. Well, Adams made it pretty clear that he didn't buy the argument that this guy's criminal history category was overstated. Would that be a fair statement? Yes, Your Honor. You've just mentioned clearly erroneous facts. I know that there is the statement that Judge Adams made that he always has a gun. Is there any other clearly erroneous fact that you would point us to? Yes. There is the second statement where he says, quote, and this is page ID number 218, is a bit unusual, that argument that his neighborhood was difficult, et cetera, because it appears the family had, obviously, were individuals who had, I would say, were professionals. And so it's specifically the fact that the neighborhood was difficult and that the judge did not believe so. In saying that, the district court failed to acknowledge how Mr. Harsley witnessed a stabbing at age six or seven, how he started drinking alcohol at age eight, how there's drugs and violence in that neighborhood, and how he directly witnessed the murder of his best friend. The district court made no direct allusions to any one of these instances, all of which were mentioned in the sentencing memorandum. And so that combined with the, as you noted, the he had a gun all the time, which nowhere is seen in this case. There's no indication that he's had a gun in the last 10 years. There's no indication that he had a gun at the scene of the crime, and yet the judge still made that statement that he had a gun all the time. So arguably, the DJ made the statement right after describing the criminal history, which involved several incidents with a gun. Is that correct? Yes, Your Honor. That's correct. And then Mr. Harsley was in prison for a while and then got out within a year or so of the distributing meth crimes that he's convicted of here. Is that right? Yes, that's correct. And that there was still no gun at the scene of the crime. There's no... At the scene of the meth transactions. Yes. Which were with a CI or something like that. Yes, that's correct. And so there is no reference to any gun for any period of time since his convictions when he was just 20 years old. And Adams doesn't actually note that he was carrying a gun any time after these prior gun offenses, does he? The statement that he has a gun all the time seems to suggest that Judge Adams believes that he does have a gun. You just finished a conversation with Judge Moore where you agreed that that statement was in the context of his prior criminal history, and it accurately reflected that I think it was four out of five offenses included carrying a gun. So I don't have the exact quote in front of me, Your Honor. However, I believe that the exact context of that statement was in discussions with Mr. Harsley's counsel, which stated that he might be friendly to you when he's on the streets or he might be friendly to you, but when he's on the streets, he's got a gun all the time. And so the district court seems to be referring directly to Mr. Harsley on the streets in the present day. So again, following up on our earlier conversation, it seems to me that under Bostick, the purpose of that is to clear up at the time what counsel believed to have been a mistake made by the  Yes. And there was no impediment whatsoever after the Bostick question, the lawyer saying, well, I noticed, Judge, that you said he has a gun all the time and I want to make it clear there's no evidence of that. And I think it's incumbent upon you to put on the record what you meant by that. Yes, Your Honor. If the lawyer had said that, we wouldn't be here, right? Yes, Your Honor. We therefore believe this is under plain error review, that there's a clearly erroneous fact under plain error review. And Your Honor's at bottom that this is a case about showing its work, that we know this from U.S. v. Byrd. We know that we worry about when the district court might misconstrue, ignore, or forget the record. And we know that from Thomas. We worry about when it makes a non-fervous, or it makes, pardon me, when it's non-responsive to a non-fervous argument from Thomas Matthews. And therefore, Part of the showing your work doctrines, we'll call it for just a second, looks to the question of whether a mistake was made. And if so, whether it made any difference in the proceeding. I mean, can you credibly say that you think that there would be any possible difference made if this went back for a do-over on the two items that you're talking about? Yes, Your Honor. We believe that Mr. Harsley was, that the career offender, that the career offender designation gave Mr. Harsley 151 months additional sentence than he would have without that career offender designation. You're not saying that that was applied improperly. You're saying he should have gotten a bigger variance because of that? We leave that argument to our briefs. But what we do recognize that in the sentencing memo, the Mr. Harsley's counsel acknowledged that two-thirds, that Mr. Harsley had a less severe criminal history than two-thirds of career offenders. And in addition, that the average sentence for a career offender was 141 months and that over half of them receive a variance. And so therefore, there is very credible opportunity for there to be a lower sentence here and that we do believe that absent the clearly erroneous findings of fact and absent the failure to adequately acknowledge the, adequately address the argument, that Mr. Harsley would likely have had a lower sentence. And therefore, we seek a remand for resentencing. Thank you very much. Thank you. Good morning, your honors, and may it please the court, Jason Mannion on behalf of the United States. I'd like to start briefly with the career offender issue even though it wasn't the focus because I think the first question in the sentencing is whether the district court correctly calculated the guidelines and any claim that the guidelines were not calculated correctly was first of all waived, second, it's foreclosed by binding precedent, and third, would not even help Harsley even if it wasn't waived and wasn't foreclosed. So the district court correctly calculated the guidelines. In fact, when the district court asked counsel for the appellant whether he objected to the career offender guideline range, he responded, no, your honor, those are, I believe, the correct calculation. So then the question becomes whether the district court adequately explained its sentence, and the district court did. The district court, I mean, there's more than seven and a half pages of explanation for the sentence in addition to extra back and forth before the district court started imposing a sentence in which the district court discussed whether a downward variance would be appropriate. And the district court clearly understood the arguments that there should be a downward variance. The district court just didn't accept those. And I shouldn't say didn't accept those. The district court said that those arguments counseled for a bottom of the guideline range sentence, just that it did not counsel for an additional downward variance. And so I want to briefly address the... Did the district judge address the question of whether the career offender guidelines result in half the time having a variance downward? The district court addressed the sentencing statistics that the pre-sentence report provided. And so I don't think the district court referred to the specific numbers that were raised in the sentencing memo about which career offenders get a downward variance. But the district court did address the statistics in the PSR, which indicated that career offenders, the mean, median sentences were all well below a career offender guideline range. So the district court addressed the PSR statistics by name and the idea more generally. And why did the district judge believe that a low end of the guidelines for a career offender would be appropriate here as opposed to a variance? The district court named quite a few of the 3553A factors when it addressed why the sentence was necessary. It addressed the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the sentencing range, and sentencing disparities. So the district court explained why it believed that this sentence was necessary. And quite a lot of that had to do with Mr. Harsley's criminal record. So he, beginning at age 16, he was charged with unlawfully possessing six firearms. From that point to the point that he was charged in this case, there was a 220 month period. And there was only four of those months where he was not either committing a new crime in prison for committing a crime or under court supervision for committing those crimes. So he had a really extensive criminal record, which I think Judge Adams thought required the career offender sentence. How do you deal with the statement that he's always using a gun? I don't have the exact language, but I'm sure you can give it to me. It seems that that is obviously a bit of a stronger point than is true in the sense that these three meth transactions did not involve a gun. So we don't believe that the district court made a fact finding that Darren Harsley at all times had a gun. If you look, that was a statement made at the end of a whole page of addressing his firearm related offenses. Beginning in 2006, the district court discussed each of them and then sums that up and used, I would say, a figure of speech or maybe a somewhat less formal way of saying what the district court later said. The district court later, in addressing the same issue, said that his record is replete with firearms offenses or his prior record includes numerous instances involving firearms. I counted at least five. So it's not a fact finding, it's maybe a colloquial way of summing up the fact that in a three year period, he had five different firearm related offenses. And he also didn't- There's no evidence in the record of him possessing a firearm during that couple month period. He committed these meth offenses just a couple months after he ended his state supervision for the two felonious assaults. So we don't have evidence that in that couple month period that he possessed a firearm. Again though, we don't think there was a clear- We don't think there was a fact finding here at all. And same for his comment about a difficult neighborhood. The district court didn't say anything affirmative there other than that he found Mr. Hersley's argument a bit unusual. Did not make a fact finding there and- When you're saying did not make a fact finding, when the district judge makes a statement, how is that not a fact finding? Does the district judge have to say, I find as a fact that the neighborhood is not difficult? The district court didn't even say the neighborhood was not difficult. The district court said that I find his argument that it was a difficult neighborhood a bit unusual. So it's not even framed in the way- I'm not saying that the district court had to say this is a fact finding. But the district court didn't say this wasn't a difficult neighborhood. Even if the district court had made a fact finding there, it wouldn't be clearly erroneous. Because if you read the PSR and if you read what Mr. Hersley told the pre-sentence report about- I'm sorry, the probation department during the preparation of that report about his neighborhood, he made- he himself made comments about it was an ordinary middle class neighborhood. And so we don't think there was a finding. If it was, it wasn't a clearly erroneous one. Can you briefly address the pending motion to take judicial notice and tell me why these documents were not put in the record earlier and why they're necessary? Your Honor, we don't believe they're necessary. Well, if it's not necessary, why should we take judicial notice then? We would be very happy to have you rely just on the pre-sentence report. When we wrote our brief, that's what my colleague who wrote the brief said, is that it was an undisputed portion of the pre-sentence report and this court's case law frequently relies on undisputed portions of the pre-sentence reports. There was an argument made in the brief that this court could only look at Shepard Docks and could not look at the pre-sentence report. So we provided those documents to you in case you would find them helpful. We'd be very happy to have you deny as moot that motion and to rely on the pre-sentence report. Thank you. The final thing I will say on the inadequate explanation points, and this was already covered in the first part of the argument, but at the Bostick question, the district court asked for any objections that were not previously raised. If there was a problem with the district court's explanation of its sentence or if there was a problem with anything the district court said during that sentencing, that was the time to raise that to the district court. If that had been raised, the district court could have provided more reasoning or said I'm not relying on that. And so that is an added reason why this court should reject those claims. The only claim here that was, there's only two things I think that are fully preserved all the way through. And one is the claim that the meth guideline is too harsh. The district court didn't explicitly address the meth guideline, but that's because the meth guideline did not affect the guideline range in this case in any way. The only other thing that was preserved was a request for a downward variance based on this argument that although, or that the timing of his career offender predicate offenses was so close together that it made him less culpable than another career offender. That's a substantive, that's a request for a downward variance, that's a substantive reasonableness argument. The district court considered that, the district court said that counseled for a bottom of the guideline range sentence, and that within guideline sentence is presumptively reasonable. So why is that argument enough for the bottom of the guideline range but not enough for something a few months less? Do we have any explanation for that? So from a preservation standpoint, they asked for a 160 month sentence as a result of that  The district court said that it saw no reason to vary below the guideline range. It said it counseled for a bottom of the guideline sentence but not a below guideline sentence. That's the district court, within the district court's discretion to set the final number is a presumptively reasonable sentence because it is within the guidelines. And so I'm not saying that the district court could not have thought that this would have counseled in favor of a below guideline sentence. It certainly could have viewed it that way. It just didn't, and that wasn't an abuse of discretion. If there are no further questions, we will rest on our briefs. Thank you. Thank you. Your Honors. The district court failed to address an argument and fundamentally misconstrued about the proximity and time between Mr. Harsley's prior convictions. It said, quote, that there was no reason why to vary and that, quote, it was struggling to see what is in the record that would result in that variance for Mr. Harsley. That was on page ID number 208. Despite the fact that case law demonstrates that a person that has not been subject to deterrence between his convictions is therefore less culpable than a person who has been subject to deterrence, the district court found the proximity and time to be an aggravating factor here. It found that it made Mr. Harsley more dangerous, that the closeness and time, it just indicates that he's willing to continue his violent activities. That is a fundamental misconstrual of the argument and the case law that we have. Isn't another way of looking at this to say that if he had only these two predicate offenses and then he'd been trouble-free for 20 years and he commits a meth offense, I mean, you've got a more compelling argument there, it seems to me. But when he follows it up with these two predicate offenses and then he commits four or five, whatever the number was, with weapons thereafter, I don't see why that's turning the argument on its head. It seems to me it's just saying that's what it is. He does these two things. He obviously didn't learn from them regardless of whether there was time for reflection and he just kept violating the law. So explain, what's the matter with that? That the purpose of the career offender guidelines and the purpose of designating a person as a career offender is to show that they've been subject to deterrence and that they still have not learned their lesson. Here, Mr. Harsley is missing that first point, that he wasn't subject to deterrence and that therefore that he didn't have the opportunity to demonstrate any growth in between his prior actions, in between the two felonies that are separated by one week apart that happened when he was 20 years old. And that the district court, it continuously emphasized Mr. Harsley's propensity for violence when he had nothing in this case that suggested that. That the perception of the gun tied with this idea that Mr. Harsley is willing to commit the, continue his violent activities, that all this ties together to show that without these that the district court might have made a different argument. That the district court might have chosen a different sentence and properly noted that even with the district court quoted on the PSR that the mean sentence for a career offender was 191 months, that was on page 221. The district court didn't even mention the sentencing memo statistics that the average for a career offender is 141 months. And so all of these factors demonstrate that Mr. Harsley's sentence could have been lower in the absence of these misconstruals of the arguments. And we therefore thank you for your time and request a, and request a remand for resentencing. Thank you. Thank you both for your argument. And Mr. Vandenvoort, thank you in particular and your colleagues at the University of Michigan Law School. You always do an excellent job and we appreciate it very much. Thank you to the Assistant U.S. Attorney as well. But we thank you for taking on this kind of a challenge as a law student. The case will be submitted and the clerk may adjourn court.